792 P.2d 783

**Mary MUSTARD, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**R.V. City, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 2 CA–IC 89–0068.

Court of Appeals of Arizona, Division 2, Department A.

May 15, 1990.

Dee–Dee Samet, Tucson, for petitioner employee.

The Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for respondent.

State Compensation Fund by Christopher E. Kamper, Chief Counsel, and Mark R. Christensen, Tucson, for defendants.

OPINION

ROLL, Judge.

In this special action, petitioner Mary Mustard appeals from the administrative law judge's (ALJ) denial of benefits. Because the ALJ incorrectly concluded that petitioner's injuries arose from horseplay

constituting a substantial deviation from her work, we set aside the award.

## BACKGROUND

On February 6, 1989, Mustard sustained an injury when accidentally struck with a hammer by a fellow employee while working for R.V. City. Her claim for benefits was denied and she timely protested.

At the hearing, Mustard and three employees testified. Mustard testified that while performing her duties, she walked by Joseph Wooley, who had dropped a wrench, and she joked that Wooley had dropped his tooth caps. Mustard's comment was a reference to the fact that Wooley had knocked some teeth out during a previous industrial injury, requiring that some teeth be capped. She testified that she continued walking at a fast pace. When she heard a noise behind her, she glanced back and saw Wooley approaching. As she tried to step out of Wooley's way, she slowed down and Wooley ran into her, accidentally striking her coccyx area with the hammer.

Wooley testified that after Mustard made the joke about his teeth, he made a mock threatening response. She laughed and he grabbed a hammer and jumped off a trailer hitch tongue. Mustard then ran away from him, moving in the direction of her job duties. Wooley ran after her and accidentally collided with her when she abruptly stopped.

A fellow employee, Steven Powers, testified that Mustard proceeded eight to ten feet past Wooley, then started running; Wooley jumped off the trailer tongue and chased Mustard. Michael Wilson testified that neither Wooley nor Mustard ran. Wilson stated he observed the incident, although Wooley testified that Wilson had stated he never saw the incident.

Mustard, Powers, and Wilson testified that the employees often joked but did not chase each other.

The ALJ found that Mustard's jestful comment to Wooley was not a substantial deviation from her job, but that her accelerated movement was a substantial, purely personal deviation from her job, which did not benefit her employer. The ALJ ruled that the resulting accidental injury was non-compensable. Mustard appeals from this award.

## ISSUE ON APPEAL

Mustard argues that her accelerated movement was not such a substantial deviation from her employment so as to remove her from the course and scope of her employment.

## DISCUSSION

■ An Industrial Commission award will not be set aside if there is a reasonable basis in the record to support such an award. *Bill Breck Dodge, Inc. v. Industrial Comm'n*, 138 Ariz. 388, 390, 675 P.2d 275, 277 (1983). The appellate court is not a trier of fact and will not disturb findings of fact unless they cannot be supported by any reasonable theory of the evidence. *Nelson v. Industrial Comm'n*, 134 Ariz. 369, 373, 656 P.2d 1230, 1234 (1982). The ALJ is the sole judge of the witness's credibility and may reject the testimony if it is self-contradictory, inconsistent with other evidence, or directly impeached. *Holding v. Industrial Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App.1984).

The ALJ concluded that "[n]either the applicant's jestful comments nor her laughter thereafter were substantial deviations from the applicant's job...." However, the ALJ then held that Mustard's accelerated pace was a substantial deviation from her job, was personal and without benefit to her employers, and rendered her injury non-compensable. *Anderson Clayton & Co. v. Industrial Comm'n*, 125 Ariz. 39, 41–42, 607 P.2d 22, 24–25 (App.1979).

■ We disagree that Mustard's conduct constituted a substantial deviation from her job. Mustard was headed toward the lot to assist a fellow employee when she passed Wooley. Her accelerated pace did not remove her from her original itinerary, only quickened her journey. The fact that her accelerated pace "provoked" Wooley to chase her is of no consequence. As Larson notes:

The substantial character of a horseplay deviation should not be judged by the seriousness of its consequences in the light of hindsight, but by the extent of the work-departure itself.... One way to test the issue of deviation ... would be to ask: ... "[Has that person] left his employment?"

\*   \*   \*   \*   \*   \*

This type of analysis is particularly important when the claimant's act, standing alone, would have been clearly substantial, but led to the trouble because of more substantial acts then undertaken by a co-employee.

1A A. Larson, *Workmen's Compensation Law* § 23.63 (1985). It is not Wooley's conduct, but that of Mustard's which must be examined.

We agree with the test set forth by Division One of this court in *Jaimes v. Industrial Comm'n*, 163 Ariz. 307, 308–10, 787 P.2d 1103, 1104–06 (Ct.App.1990) (citing 1A Larson, *Workmen's Compensation Law* § 23.00 (1985)):

[W]hether initiation of horseplay is a deviation from course of employment depends on

(1) the extent and seriousness of the deviation,

(2) the completeness of the deviation (i.e., whether it is as commingled with the performance of duty or involved an abandonment of duty),

(3) the extent to which the practice of horseplay had become an accepted part of the employment, and

(4) the extent to which the nature of the employment may be expected to include some such horseplay.

The degree of deviation is but one factor to be considered in a *Jaimes* analysis. In *Jaimes*, three maintenance employees of a golf course were riding in a utility cart from one part of the golf course to another part. Two employees sat in the seats of the cart while the claimant sat on the dashboard. The claimant tickled the cart driver who let go of the steering rudder, causing the claimant to fall in front of the cart. The cart ran over the claimant and caused serious injury. The court held that this horseplay was an insubstantial deviation from the claimant's course of employment and was therefore compensable.

Because insufficient evidence exists to support the ALJ's finding that Mustard's conduct was a substantial deviation from employment, the award is set aside.

HOWARD and HATHAWAY, JJ., concur.